528 A.2d 1374

**STATE AUTOMOBILE INSURANCE ASSOCIATION and Statesmen Insurance Company, a Corporation**

v.

**Carroll M. ANDERSON and Edward M. Lentz,**

**Appeal of Carroll M. ANDERSON.**

Superior Court of Pennsylvania.

Argued Jan. 21, 1987.

Filed July 22, 1987.
Petition for Allowance of Appeal Denied Jan. 19, 1988.

86

Thomas S. Ling, District Attorney, Bedford, for appellant.

Louis C. Long, Pittsburgh, for State Auto., appellees.

Before BROSKY, DEL SOLE and CERCONE, JJ.

BROSKY, Judge:

This is an appeal from an order granting summary judgment in a declaratory judgment action instituted by appellee insurance company. The effect of the order was to hold that appellee had no obligation to indemnify appellant for injuries arising out of an incident on appellant's farm.

In challenging the issuance of summary judgment in this case, appellant advances two arguments. The first asserts that the exclusion set forth in the policy with regard to farm employees is ambiguous and therefore the appellee should be precluded from denying coverage. The second argument asserts that the injured party was not an "employee" at the time of injury and therefore his injury does not fall within the exclusion in question. Upon review of the record and arguments advanced by both parties we conclude that summary judgment was improperly granted below. Consequently, we vacate the order in question.

On September 15, 1982, Edward M. Lentz suffered personal injury to his left leg when his pants became caught in an unshielded power takeoff shaft of a tractor owned by appellant. Lentz had come to appellant's farm that morning to assist in the loading of "silage," cut hay and corn for cattle feed, into a silo. Appellee instituted a declaratory judgment action after notice of the accident was given to appellee. Appellant had purchased a Farmer's Comprehensive Personal Insurance policy from appellee which was in effect at the time of the injury. The trial court, finding no disputed issues of material fact, decided that an exclusionary provision in the insurance contract was applicable and that appellee had no duty to indemnify or defend appellant. This appeal followed.

Under the insurance contract appellee was obligated to pay on behalf of the appellant/insured all sums to which the appellant became legally obligated to pay for bodily injury or property damage occurring and resulting from the operation of the farm. The appellee sought to deny coverage based upon the following language:

This coverage does not apply:

To bodily injury to (1) any farm employee, other than an insured farm employee, if the bodily injury arises out of and in the course of his employment by the insured ...

The term "farm employee" was defined as

"an employee of any insured whose duties are principally in connection with the farming operations of the insured

but does not include a residence employee or an employee while engaged in any insured's business pursuits other than farming".

Deciding that the language above was "clear and unambiguous" and finding that the injury to Lentz fell within this exclusion, the trial court granted appellee's motion for summary judgment. In so deciding, the trial court placed a great deal of emphasis on our Supreme Court's decision in *Standard Venetian Blind Company v. American Empire Insurance*, 503 Pa. 300, 469 A.2d 563 (1983). *Standard Venetian Blind*, in essence, held that when an exclusion was clearly applicable to an occurrence, the exclusion could not be avoided by an insured's allegation that he either was unaware of the exclusion or failed to comprehend it. In this respect, the Supreme Court rejected this Court's holding in *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974), which stated that an insurer had a burden of showing that the insured was aware of the exclusion and that the effect was explained to him. However, contrary to the trial court's assessment, *Hionis* has not been overruled. The Supreme Court simply rejected its application on the record presented in *Standard Venetian Blind* while indicating its continuing potential applicability under a different fact pattern. In fact, the Supreme Court recently upheld a trial court's use of a jury charge based on *Hionis* in *Tonkovic v. State Farm Mutual Automobile Insurance Co.*, 513 Pa. 445, 521 A.2d 920 (1987), and further expounded upon their *Standard Venetian Blind* decision. The Supreme Court explained that in *Standard Venetian Blind* the insured had purchased a standard liability policy yet attempted to recover damages sustained to their own property. Not only was this damage clearly excluded under the terms of the policy, the court also noted that it was unreasonable to expect such coverage under a policy of this type. Under such facts, *Hionis* would not compel coverage of this loss despite the exclusion.

In this case we are called upon to decide whether the exclusion relied upon is "clear and unambiguous" and if it

applies to the occurrence in question. However, what seems clear from the extent of litigation involving contractual terms or statutory language is that what is clear and unambiguous to one individual is not necessarily so to another. In the present case we agree with appellee and the trial court that the exclusion is, relatively speaking, "clear and unambiguous" upon its face. However, this is so *only* upon reaching the conclusion that an individual was a "farm employee." This term is defined in the policy but necessarily entails a finding that an individual is an "employee." This term is not defined. Therefore, basic laws of contract construction and interpretation will govern the determination of whether Lentz was an employee at the time the injury was sustained.

■ Appellee indicates its position on the scope of coverage in its brief where it states "it is obvious that the insurer intended to exclude ... all persons remuneratively engaged in farming operations...." Be that as it may, our law has never indicated that one party's subjective intent or understanding of a contractual obligation controls that obligation. Rather, instead, our law requires a "meeting of the minds" of sorts. If there is not an actual or literal understanding of the contractual obligation, then it is considered to be that which a reasonable person in similar circumstances would understand the contract to be. Another contractual principle requires that interpretation of an agreement be in favor of the party who did not draft the document. Perhaps it was the combination of these two principles which has led our Supreme Court to indicate that the proper focus with regard to the coverage extended under an insurance contract is the reasonable expectation of the insured.

In *Collister v. Nationwide Life Insurance Co.*, 479 Pa. 579, 594, 388 A.2d 1346, 1353–54 (1978), the Supreme Court stated:

The reasonable expectation of the insured is the focal point of the insurance transaction involved here. Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled.

Thus, regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents (whether they be applications, conditional receipts, riders, policies, or whatever), the public has a right to expect that they will receive something of comparable value in return for the premium paid. Courts should also keep alert to the fact that the expectations of the insured are in large measure created by the insurance industry itself. Through the use of lengthy, complex, and cumbersomely written applications, conditional receipts, riders, and policies, to name just a few, the insurance industry forces the insurance consumer to rely upon the oral representations of the insurance agent. Such representations may or may not accurately reflect the contents of the written document and therefore the insurer is often in a position to reap the benefit of the insured's lack of understanding of the transaction.

. . . . .

Courts must examine the dynamics of the insurance transaction to ascertain what are the reasonable expectations of the consumer. (citations omitted).

The present case, like *Tonkovic*, differs from *Standard Venetian Blind* in that in this case the insured has purchased liability insurance and the coverage sought is related to his liability for injury to another. Consequently, it was not unreasonable for appellant to believe that coverage applies. Appellant has not sought to collect for loss to his own property or for some other loss which would seem clearly beyond the scope of the insurance purchased as was found to be the case in *Standard Venetian Blind*. Rather, instead, appellant sought initially to have coverage provided for injury to an individual who was injured on appellant's farm where it appeared that appellant may indeed be legally liable for the injury.

■ Considering only the language of the policy coverage will not apply if the injured was an "employee" engaged in farming operations at the time of the injury. However, "employee" is not defined in the policy, and while most

individuals would hold the same general concept of what an employee is, undoubtedly there are times when it is much less clear that an individual is an "employee" even under generally held concepts, much less considering individual conceptions, traditions or experiences. For instance, an individual who comes to "work" five days a week, every week and is paid an hourly wage would appear to be undisputably an "employee." However, it is less clear whether an individual who helps a farmer out a few times a year when he needs assistance is an "employee" even if he receives some payment gratuitously for his labor. Perhaps, even less clear would be the case of a neighbor who occasionally gives a farmer a hand in the expectation that the grateful farmer will return the favor when the neighbor also needs a little help; and how problematical would it be to determine coverage when a farmer's young nephew from the city comes out to the farm to visit and assists the farmer. Would coverage of an injury depend upon whether the young boy from the city gets a "kick" out of doing such "work"? Would it depend on whether the farmer gives his nephew a few dollars for helping, and if so, what if the farmer always gives his nephew a few dollars when he comes out to the farm regardless of whether the nephew helps out or not? From this perspective the present case is, in our opinion, far from clear.

The injured party, Edward Lentz, was a friend of appellant's son. Appellant's dairy farm was run principally through the labor of himself and his son. Approximately twice a year appellant would cut hay and corn and store it for feed purposes in a silo. The night before the accident appellant's son indicated to Lentz that they would be performing this operation and, as it can be performed more efficiently with three people, asked if Lentz could assist them. Lentz, who worked full time in a machine shop, indicated he could help out in the morning but had to be at work at 3:00 p.m. Lentz came to help on that Saturday morning and some time later suffered the injury in question.

Lentz testified at deposition that there was no understanding on the aspect of compensation. During the several years that Lentz knew appellant's son he had "helped out" on several occasions. Sometimes Lentz would offer assistance simply so that the two could leave the farm earlier in pursuit of entertainment. Other times he came specifically to help out. Sometimes he would get paid a few dollars but other times he did not. On the day of the injury Lentz testified that he did not know whether he would be paid or not and that he didn't particularly care whether he would be. Both Lentz and appellant testified that it was common for neighbors to help one another when it was needed and that this kind of labor was given without monetary compensation. Appellant also testified that it was common for teenagers to approach him and ask for a little work and that if he could use their help he usually did. In such cases the "boys" were usually paid, but not always, and usually at a rate of a dollar or two an hour.

With respect to the liability insurance, appellant testified:

Q. Okay. Was it your understanding that the liability insurance which you had would cover an employee on the farm?

A. Well, my understanding of my liability insurance was that if anything happened, the insurance—this would cover it. So—and I'm sure there's lots of other people that feel the same way.

Appellant's testimony further indicated his understanding that if someone worked "regular" he would need workmen's compensation insurance. In fact, appellant did purchase this coverage when his son came home from the service and indicated a willingness to work regularly because "he's the only one that ever offered to work regular as a worker." However, later he discovered that workmen's compensation would not cover a family member and, understandably, he did not renew the coverage.

Mr. Roadman, the agent who sold appellant the liability policy, indicated that he was surprised appellee had denied

coverage in light of the way the accident was reported. On this issue the following exchange took place at deposition:

Q. Are you satisfied that farmers who are purchasing general liability policies are clear on their understanding of what an insured farm employee is, what an employee is, what a non-employee is?

A. Yes, most of my farmers have worker's compensation. I have very few just liability policies. Most farmers have worker's compensation.

Q. Ok, I'm talking about the ones that just have the liability policy; are you satisfied that they have a clear understanding?

A. I certainly would hope so, particularly after this incident.

Q. Are you going back to those policy holders and advised [sic] them of this denial of coverage?

A. No.

Q. Well, how are they aware of this action then?

A. They aren't.

Q. I misinterupted [sic] what you said then. I assumed by what you said that you, because of this accident, you may have provided some information to the other policy holders that—

A. I'm simply making darn sure I stress worker's compensation.

Mr. Roadman also indicated his understanding of the term employee as being someone who worked for compensation, yet the following explanation was given at deposition:

For instance, a dairy farmer milks the cows, he's paying somebody to milk the cows, he's definitely a farm employee. But you might hire XYZ Painting Company to come in, even though XYZ Painting Company is just an individual, and he says I'll paint it for six dollars an hour. You're paying him by the hour. Do you want to call that wages? I wouldn't. Not under those terms, and I would not consider that man an employee. And if he were injured because of negligence, then in my opinion, this policy should respond, without question.

While Mr. Roadman may or may not be an "expert" as to the meaning of the policy in question, and may or may not be an "agent" of appellee capable of binding appellee to a contract, he was the principal liaison between appellee and appellant with regard to securing liability insurance from appellee. In this respect certainly his discussions with appellant have influenced appellant's expectations as to his coverage under the policy in question. Furthermore, it cannot be forgotten that appellant has been a farmer all his life and here has purchased farm liability insurance, consequently, his understanding of terms such as "farm employee" and "employee" will be influenced greatly by custom and practices in the rural farming community. In light of the foregoing, we feel the determination that, as a matter of law, appellee had no obligation to defend and/or indemnify appellant, was erroneous.

In making its decision the trial court rejected appellant's argument that Lentz was not a "farm employee" at the time the injury was sustained. In so doing, the trial court cited cases discussing the concept and definition of employee under workmen's compensation law. While such law may be helpful in determining if Lentz was an employee it is not controlling. The issue presented to the trial court was coverage of the occurrence under the policy. Relevant to this determination was the meaning of the word employee under the policy. The issue before the trial court was not whether Lentz was an employee as defined in the Workmen's Compensation statute. Consequently, the legal definition of employee would not control unless there were indications that it was understood by the parties to control. Rather, instead, the determination of whether Lentz is deemed an employee under the policy should be governed by, among other things, general understanding of the term, representations or explanations by the agent and custom and practice in the farming community. Furthermore, under *Collister* and *Tonkovic,* supra, coverage of this occurrence should focus on the reasonable expectation of the insured and not on the subjective intent of the insurer.

For the foregoing reasons, we find that the granting of summary judgment in this action was erroneous. Consequently, we vacate the order in question and remand for proceedings consistent with this opinion.

Order granting summary judgment vacated, remanded for further proceedings, jurisdiction relinquished.