549 A.2d 1304

**Lester NEIL and Arlene Neil, his Wife, Appellants,**

v.

**ALLSTATE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Sept. 1, 1988.

Filed Nov. 2, 1988.

Petition for Allowance of Appeal Denied April 17, 1989.

John C. Carlin, Jr., Pittsburgh, for appellants.

David J. Obermeier, Pittsburgh, for appellee.

Before CIRILLO, President Judge, and TAMILIA and CERCONE, JJ.

PER CURIAM:

The issue in this appeal is whether the "family exclusion" clause in appellants' homeowners' insurance policy is valid

with the result that appellants will be without insurance coverage for the jury-determined liability of appellant/mother for injuries sustained by her minor son.

Appellants' son, Adam Neil, was permanently injured when he was struck near his home by an automobile driven by Conrad Guenzel. Appellants brought a civil action against Guenzel for Adam's injuries, and Guenzel subsequently joined appellants as additional defendants on the grounds of negligent supervision of Adam. After they were joined in the action against Guenzel, the Neils requested that appellee, Allstate, represent them, by counsel, in the civil action and provide coverage for any liability which they might incur as a result of their joinder in the negligence action as additional defendants.[1] Allstate informed the Neils that the terms of their homeowners' policy excluded Adam from coverage, and therefore, they would provide no defense in the civil action. Specifically, Allstate cited the following provision which is the subject of this appeal:

We [Allstate] do not cover bodily injury to an insured person. . . .

The definition of "insured person" under the policy was:

"Insured Person"—means you [policyholder] and, if a resident of your household, any relative and any dependent person in your care.

After Allstate refused to defend them, appellants brought the instant action for declaratory judgment. In their complaint, appellants sought to have the "family exclusion" clause of their policy, upon which Allstate had relied in refusing coverage and a defense, declared invalid and void as against public policy. Appellee sought, by motion, an order of summary judgment, citing the terms of the policy. On December 18, 1987, appellee's motion for summary

1. Also joined as additional defendants in the action against Guenzel were Thomas and Susan Lordi, owners of a nearby property upon which was some shrubbery which Guenzel contended obscured his vision while driving, and the Borough of Monroeville, which Guenzel contended was negligent in failing to enforce its ordinance requiring shrubbery to be no higher than a specified height.

judgment was granted, and appellants then filed the instant timely appeal.

Meanwhile, the lawsuit against Guenzel for Adam's injuries proceeded. The jury in that case returned a verdict of $250,000 in Adam's favor, which was apportioned as follows: twenty-five percent attributable to Conrad Guenzel, forty percent attributable to Arlene Neil, thirty-five percent attributable to Thomas and Susan Lordi, and zero percent attributable to the Borough of Monroeville. As a result of this apportionment of negligence, appellant Arlene Neil is liable for her son's injuries in the amount of $100,000.

Since this case comes to us on the granting of a motion for summary judgment, we will first look to the standards under which such relief is granted. Summary judgment should not be entered unless the case is free from doubt. *Weiss v. Keystone Mack Sales, Inc.*, 310 Pa.Super. 425, 456 A.2d 1009 (1983). The relief should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P., Rule 1035, 42 Pa.C.S.A.; *Hower v. Whitmak Associates*, 371 Pa.Super. 443, 538 A.2d 524 (1988). On review, the record must be examined in a light most favorable to the non-moving party, and in doing so all well-pleaded facts in the non-moving party's pleadings are accepted as true and that party is given the benefit of all reasonable inferences to be drawn therefrom. *Spain v. Vicente*, 315 Pa.Super. 135, 461 A.2d 833 (1983).

It has also recently been established that summary judgment is available in a declaratory judgment action. *Darlark v. Henry S. Lehr, Inc.*, 360 Pa.Super. 509, 520 A.2d 1206 (1987). In addition, we have held that an inquiry into whether a particular loss is within the coverage of an insurance policy is a question of law, which may be decided on a motion for summary judgment. *Creed v. Allstate Insurance Co.*, 365 Pa.Super. 136, 529 A.2d 10 (1987), allocatur denied 517 Pa. 616, 538 A.2d 499 (1988).

■ With these principles in mind, we turn to an examination of appellants' contentions on appeal. Appellants argue that the family exclusion clause contained in their policy of homeowners' insurance is against the public policy of this Commonwealth and should be declared void. They submit that judicial abolition of the doctrines of parental immunity and interspousal immunity from tort liability requires such a declaration. *See Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971) (abolition of parental immunity); *Hack v. Hack,* 495 Pa. 300, 433 A.2d 859 (1981) (abolition of interspousal immunity). Appellants contend that the judicial and social policy of this Commonwealth is one of compensation to injured family members, and that when insurance companies insert family exclusion clauses into their policies, they are interfering with this policy, and the clauses should be declared void. We cannot agree.

In *Mamlin v. Genoe,* 340 Pa. 320, 17 A.2d 407 (1941), our Supreme Court set forth the standard under which public policy arguments in favor of voiding an insurance clause will be examined:

"It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in [declaring that policy to be against public policy]."

*Id.,* 340 Pa. at 325, 17 A.2d at 409, cited in *Guardian Life Insurance Co. v. Zerance,* 505 A.2d 345, 354, 479 A.2d 949, 954 (1984).

Generally, the courts will look to two sources to ascertain public policy in a given area: legislative mandate and judicial precedent. *Guardian Life Insurance Company v. Zerance,* 505 Pa. 345, 479 A.2d 949 (1984) ("Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest"). In addition, when scrutinizing an insurance policy's provisions, the general and well-established rule is that where the language of an insurance policy is unambiguous, a court cannot adopt a construction which

conflicts with the clear meaning of that language. *Guardian Life Insurance Co. v. Zerance, supra; Ditch v. Yorktowne Mutual Insurance Co.,* 343 Pa.Super. 22, 493 A.2d 782 (1985); *U.S. Fidelity and Guaranty v. Griggs,* 341 Pa.Super. 286, 491 A.2d 267 (1985).

In *State Farm Mutual Automobile Insurance Co. v. Williams,* 481 Pa. 130, 392 A.2d 281 (1978), cited by appellants, our Supreme Court voided an exclusionary provision in an insurance policy because the clause conflicted with the policy of this Commonwealth as set forth by the legislature in the Uninsured Motorists Act, 40 P.S. § 2000. The plaintiff in *Williams* was involved in an automobile accident with an uninsured motorist. At the time, he was driving his wife's automobile which was insured by State Farm under a policy containing the legislatively mandated uninsured motorist provisions. Plaintiff also had insurance coverage from State Farm on his own automobile. This policy contained the mandated uninsured motorist provisions.

State Farm paid the plaintiff the $10,000 coverage limits under his wife's policy, but although plaintiff's injuries apparently exceeded $10,000, the company refused to make any payments under plaintiff's own policy. Plaintiff then requested arbitration, and the arbitrator denied coverage on the basis of a policy provision which prohibited all recovery by plaintiff under his policy if the injury was sustained while he occupied another motor vehicle owned by a resident of the same household, and which was not an insured vehicle under his own policy. The Superior Court affirmed.

On appeal, the Pennsylvania Supreme Court reversed, on the basis that the exclusionary provision of the insurance policy conflicted with the provisions of 40 P.S. § 2000, which requires insurance protection to be provided for bodily injury or death to insured persons who are legally entitled to recover damages from the owners or operators of uninsured motor vehicles. The court reasoned that the exclusionary provision of the State Farm policy was unenforceable because it permitted a diminution of the protec-

tion afforded by the statute below the statutory limits. *Williams, supra,* 481 Pa. at 139–40, 392 A.2d at 285–87.

The instant case is not analogous. Unlike the area of automobile insurance, which is legislatively regulated, there is no legislative enactment in Pennsylvania governing or requiring that insurance companies provide a specified level of insurance coverage to homeowners. Thus, although we do not deny our power to hold unenforceable an insurance policy provision as did the court in *Williams,* appellants have not cited and we know of no legislative enactment in the field of homeowners' insurance which would require voiding the family exclusion provision herein on the grounds that it violates public policy.

Nor have we found in judicial precedent a firm public policy to void family exclusion provisions. In fact, our appellate decisions have upheld such clauses. *See Puller v. Puller,* 380 Pa. 219, 110 A.2d 175 (1955) (family exclusion provision upheld in suit by tort-feasor against joint tort-feasor, insured under the policy; insurance company not required to pay for injuries incurred by insured's wife and daughter); *Great American Insurance Co. v. State Farm Mutual Automobile Insurance Co.,* 412 Pa. 538, 194 A.2d 903 (1963) (policy provision excluding residents of the named insured's household upheld, precluding recovery by the named insured's son for injuries sustained while a passenger in the insured automobile). Even in cases decided subsequent to *Falco* and *Hack,* which abolished parental and interspousal immunity, family exclusion provisions have been upheld.

In *Paiano v. Home Insurance Co.,* 253 Pa.Super. 519, 385 A.2d 460 (1978), decided seven years after *Falco,* this court upheld the insurance company's denial of coverage and a defense to the wife of the insured who had been found by a jury to be a joint tort-feasor in the accident resulting in injuries to her son. In denying coverage, the insurance company relied upon a provision in the policy which excluded residents of the same household of the insured from general liability coverage under the policy.

The appellant in *Paiano* argued that the family exclusion provision was "unconscionable" on the basis that family members often accompany one another in motor vehicles, and that the insured reasonably assumes his liability insurance will cover them. The court rejected this argument, citing case law upholding the validity of the family exclusion. Although the issue of the abolition of the parental immunity doctrine was not discussed by the court, the case does stand for the proposition that family exclusion clauses have been upheld despite the absence of parental immunity since *Falco*.

Similarly, in *Groff v. State Farm Fire & Casualty Co.*, 646 F.Supp. 973 (E.D.Pa.1986), decided after both *Falco* and *Hack* and in which Pennsylvania law was applied, a family exclusion provision was upheld. In *Groff*, a case factually similar to the case *sub judice*, plaintiffs were the parents of a child who had lost an eye in a bow-and-arrow accident involving another child. The *Groff* plaintiffs sued the other child's parents (and the owners of the premises upon which the accident occurred) in the state court, whereupon the defendants joined the plaintiffs as additional defendants in that action, alleging negligent supervision. The case came up for disposition in Federal District Court on cross motions for summary judgment, with plaintiffs alleging that the homeowners insurance policy issued to them by State Farm (defendant in the federal court action) obligated the insurance company to provide them a defense in the state court action. The court rejected plaintiffs' argument, stating:

> Under the terms of the policy, State Farm is required to provide a defense against claims within, or arguably within, the liability coverages of the policy. But the terms of the standard "household exclusion" contained in the plaintiff's policy unmistakably exclude from coverage claims for bodily injury sustained by an "insured" as defined in the policy; and plaintiffs' minor son is plainly an "insured" within that definition, since he is a "relative" and resides in the same household as the named insureds. Thus, the policy unambiguously excludes cov-

erage, and the defendant is not required to defend the state court action.

Counsel for plaintiff argues that this is a case of first impression, and that even if the policy unambiguously excludes coverage, the exclusion is contrary to public policy and should not be given effect. I find these arguments puzzling: *see, e.g., Paiano v. Home Insurance Co.*, 253 Pa.Super. 519, 385 A.2d 460 (1978) and the many cases there cited. As the courts in all of those cases recognized, private parties are generally free to decide what insurance coverage they want and will pay for, and insurance companies are free to decide what risks to undertake and what risks to reject. I am unaware of any public policy interests which would be served by mandating insurance of parents against personal injury claims brought by their minor children.

The court in *Groff* granted State Farm's motion for summary judgment, holding that "the clear language of the policy and the state of the decisional law of Pennsylvania" required such an outcome.

In addition, *Hack* itself noted with approval the existence and validity of family exclusion clauses. In analyzing the continuing validity of the doctrine of interspousal immunity in tort, the *Hack* court noted that one of the justifications for the doctrine had been the concept of prevention of collusive suits between spouses. The court rejected the possibility of collusion as a persuasive reason for continued adherence to the immunity doctrine. Instead, it noted that "[t]he laws of contract and evidence are ample protection against any danger of fraud or collusion," and cited for this proposition the *Puller* and *Great American Insurance Co.* cases, *supra*, in which family exclusion provisions had been explicitly upheld.[2] Thus, one of the *Hack* court's reasons for abrogating the interspousal immunity doctrine was the existence and validity of family exclusion clauses in insur-

---

2. The *Hack* court also noted that the possibility of collusion as a justification for continued adherence to the parental immunity doctrine had been rejected in *Falco.* 495 Pa. at 395, 433 A.2d at 866.

ance policies which prevent the possibility of collusive suits. Appellants' argument for invalidating the family exclusion provision on the basis of *Hack's* (and *Falco's*) abandonment of the tort immunity doctrines thus flies in the face of the express reasoning of our highest court.

We also note, as appellee has contended, that other states in which the tort immunity doctrines have been rejected have not taken the additional step of declaring invalid the family exclusion clause in homeowners' policies. For example, in *State Farm Fire & Casualty Co. v. Clendening*, 150 Cal.App.3d 40, 197 Cal.Rptr. 377 (4th Dist.1983), the California Court of Appeal addressed many of the same arguments concerning the validity of family exclusions as appellants here have set forth. The case involved a homeowners' insurance policy which State Farm had issued to the appellants, who were husband and wife, living together. In a separate action, the wife had sued the husband for injuries she sustained as a result of his tortious acts. State Farm then filed an action for declaratory relief, citing the family exclusion provision of the homeowners' policy. A judgment was rendered in favor of State Farm, and the Clendenings appealed. Their argument on appeal was that the exclusionary clause was unenforceable because it was not clear and conspicuous, was against public policy, and was invalid unless specifically authorized by the legislature.

The court rejected each of these arguments. They held that the exclusions in the policy were "plain in their position, labeling and capitalization" and that the language of the exclusion was clear and unambiguous. With regard to appellants' public policy argument, the court held there was "no authority either in court decision or legislative enactment" to suggest that the exclusion was against public policy. The issue of intra-family torts was also addressed:

Appellants stress that the family exclusion clause is contrary to public policy since it may prevent a family member from collecting damages for injuries inflicted by another family member. The practice of excluding family members from coverage allegedly thwarts the express

policy against immunity for intra-family torts. (citation omitted).

However, the implementation of the exclusionary clause does not deprive Juanita Clendening of her lawsuit since she may still sue her husband and recover from available assets. The insurance carrier need not insure risks arising from intra-family torts unless it chooses to do so. Where, as here, the exclusionary clause is clear, plain and unambiguous and there is no statutory prohibition, there is no public policy reason to prohibit insurance contracts such as these. (citation omitted).

150 Cal.App. at 43, 197 Cal.Rptr. at 378.

The court in *Clendening* also rejected appellants' contention that the family exclusion clause was invalid unless the Legislature authorized it. Appellants had argued that the legislature had specifically authorized family exclusion clauses in fire and automobile insurance policies, which had been codified in the California Insurance Code. However, the *Clendening* court held that

[t]he absence of such a statute in the area of homeowners insurance is not authority for the claim made here. "The right of a company to limit its contract of coverage may not be questioned ..., provided the limitation is not prohibited by public policy or statute." (citation omitted).

In *Allstate Insurance Co. v. Elwell*, 513 A.2d 269, 273 (Me.1986), the ex-wife of the insured sought to have the family exclusion provision of an automobile insurance policy declared void on public policy grounds so as to require her former husband's insurance to indemnify her for injuries. The Maine Supreme Judicial Court rejected appellant's public policy argument on two grounds: 1) that the provision did not violate the public policy of the state as expressed by the state legislature in Maine's Financial Responsibility Law (which was distinguished from mandatory insurance statutes in other states under which all motorists are required to obtain a minimum level of automobile liability insurance), and 2) that prior Maine judicial decisions abrogating interspousal and parent-child immunity in tort did not represent a public policy to invalidate family exclusion

provisions. The court held that its prior decisions abolishing the tort immunity doctrines "did not purport to determine the scope of a contract between an insured and an insurer, but merely determined the right of family members to bring an action against one another ... In sum, the abolition of intra-family tort immunities has no effect on the validity of the family exclusion." 513 A.2d at 273.[3]

■ Appellants also contend that the family exclusion clause in their homeowners' policy frustrates their reason-

3. *Accord Porter v. Farmers Insurance Co.,* 102 Idaho 132, 136, 627 P.2d 311, 315 (1981) ("[T]he right to sue a spouse for injuries caused by that spouse is an entirely separate matter from the contractual obligation of an insurance company to pay for those injuries. The fact that there is or is not an insurance policy in force covering an accident does not affect the right of one spouse to sue and obtain a judgment against the other spouse. Consequently, we do not believe that the public policy ... support[ing] ... the abrogation of spousal immunity prohibits a contractual exclusion of spousal coverage in an insurance policy."); *Allstate Insurance Co. v. Boles,* 481 N.E.2d 1096, 1099 (Ind.1985) (citing *Porter, supra,* court upheld family exclusion in automobile policy, stating, "the ability to recover from an insurer is limited by the coverage the defendant contracted for as stated in clear terms in the insurance contract. Accordingly, the household exclusion provision does not contravene any public policy underlying our decision [to abolish interspousal immunity in tort]"); *American Family Mutual Insurance Co. v. Ryan,* 330 N.W.2d 113 (Minn.1983) (family exclusion in homeowners' policy upheld despite judicial abrogation of parent/child immunity because "parties are free to contract as they desire, and so long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes, the extent of the insurer's liability is governed by the contract entered into...."); *Foley v. Foley,* 173 N.J.Super. 256, 258–59, 414 A.2d 34, 35 (1980) (family exclusion in homeowners' policy upheld despite abrogation of interspousal immunity: "[a] decision by a court that there can be liability for a tort action cannot be construed as a holding that public policy requires the responsible party to be covered by insurance or that an insurance company cannot exclude liability for that particular action"); *Suba v. State Farm Fire & Casualty Co.,* 114 App.Div.2d 280, 284, 498 N.Y.S.2d 656, 658 (1986) (family exclusion in homeowners' policy upheld against statutory and judicial public policy arguments, citing *Foley, supra,* and *Emerson, infra* ); *State Farm General Insurance Co. v. Emerson,* 102 Wash.2d 477, 482–83, 687 P.2d 1139, 1143 (1984) (upholding validity of family exclusion clause in homeowners' policy: "Contrary to appellants' arguments, the family exclusion clause does not reinstate the common law immunity but rather excludes insurance proceeds as a source of recovery when the insured has purchased a policy with such an exclusion").

able expectations as purchasers of the policy. They cite *State Automobile Insurance Association v. Anderson*, 365 Pa.Super. 85, 528 A.2d 1374 (1987), allocatur granted 517 Pa. 624, 538 A.2d 877 (1988), in support of this proposition. We disagree with appellants' contention and their reliance on *Anderson*.

The argument that an insured's reasonable expectations have been frustrated has been rejected where the provisions of a particular insurance policy are clear and unambiguous. *Standard Venetian Blind Company v. American Empire Insurance*, 503 Pa. 300, 469 A.2d 563 (1983). Where the language of an insurance contract is such, a court is required to give that language effect. *Pennsylvania Manufacturers' Association Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548 (1967). In addition, where the coverage is clearly worded and conspicuously displayed, failure to read the limitation or to understand it is no defense. *Standard Venetian Blind, supra.* See *Olson Estate*, 447 Pa. 483, 488, 291 A.2d 95, 98 (1972) ("in the absence of proof of fraud, 'failure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.' ") (quoting *Orner v. T.W. Phillips Gas & Oil Co.*, 401 Pa. 195, 199, 163 A.2d 880, 883 (1960)).

*Anderson*, cited by appellants, did not disapprove of this principle, but found on the facts of that case that the policy exclusion at issue, which centered upon the interpretation of the word "employee" in the policy, was not clear and unambiguous. Unlike *Anderson*, the policy provisions herein are clear. The Neils' homeowners' policy clearly excludes bodily injury coverage to an "insured person," and that term is defined in unambiguous language as including "any relative and any dependent person in [the policyholder's] care," if that person is a resident of the policyholder's household. In upholding the validity of the policy exclusion in this case, we cite with approval the language of the court in *Standard Venetian Blind, supra:*

312

Application of these precepts to the insurance contract in this case requires the conclusion that Venetian is bound by the agreement it signed. As found by the court of common pleas, the exclusions at issue are "plain and free of ambiguity," and could have been readily comprehended by [insured] had he chosen to read them ... [T]o allow Venetian to avoid application of the clear and unambiguous policy limitations in these circumstances would require us to rewrite the parties' written contract." 530 Pa. at 305–06, 469 A.2d at 566.

■ We similarly decline to rewrite the contract of the parties. The policy reasons and expectations of appellants are simply insufficient to persuade us to take the radical measure of rewriting the policy by invalidating the exclusion clause. To do so on the grounds appellants have suggested[4] would disturb established principles of law re-

4. Appellants have also contended that the family exclusion clause should not be enforced because the insurance contract between these parties was a contract of adhesion. While insurance contracts are generally considered adhesion contracts, such a categorization does not, by itself, render an insurance contract unenforceable. *Bishop v. Washington,* 331 Pa.Super. 387, 400, 480 A.2d 1088, 1094 (1984), citing *Witmer v. Exxon Corp.,* 495 Pa. 540, 551, 434 A.2d 1222, 1228 (1981); *Melso v. Texaco, Inc.,* 532 F.Supp. 1280 (E.D.Pa.1982). "Once a contract is deemed to be one of adhesion, its terms must then be examined by the court for fairness, in order to determine whether they were unreasonably favorable to one party." *Bishop v. Washington, supra. See also* Comment, section 2–302 of the Uniform Commercial Code, 13 Pa.C.S.A. § 2302, dealing with unconscionability in contracts covered by the Code (the purpose of § 2–302 is the "prevention of oppression and unfair surprise ... and not of disturbance of allocation of risks because of superior bargaining power.").

We do not find the terms of the instant policy unreasonably favorable to one of the parties. First, the terms of the exclusionary provision are stated in clear and precise language and are "not buried in fine print deep in the insurance contract." *Bishop v. Washington, supra,* 331 Pa.Super. at 401, 480 A.2d at 1095. Second, the Neils, as insurance consumers, had available to them in the insurance marketplace other types of insurance which could have provided coverage of the type which they seek for their son's injuries. Considering these two factors, we cannot say that appellants were deprived of a meaningful choice in their decision to purchase the instant policy. *See Koval v. Liberty Mutual Insurance Co.,* 366 Pa.Super. 415, 531 A.2d 487 (1987). In addition, as appellee has pointed out, the effect of exclusionary provisions such as the one here at issue is to make available to consumers homeowners' insurance at competitive premium rates.

garding the rights and liabilities of parties who freely contract, and would place insurance companies in the impracticable situation of insuring losses which they have specifically not contemplated and for which they have not funded reserves. As the courts of other states have indicated, the family exclusion clause does not reinstate the common law immunity between parent and child and between spouses; it rather excludes insurance proceeds as a source of recovery between such parties when the insured has purchased a policy with such an exclusion. *See e.g., State Farm General Insurance Co. v. Emerson, supra.*

ORDER AFFIRMED.

The effect of a requirement, judicial or legislative, that family members be provided coverage would be the escalation of premium rates and the resulting inability of some current consumers to afford the protections now offered by homeowners' insurance. Thus, we cannot say that the family exclusion unreasonably favors the insurance company as it also affects the availability of coverage to the consumer for other types of homeowners' losses.