**AMERICAN STONE DIAMOND;
INC., Plaintiff,**

v.

**LLOYDS OF LONDON, Defendant.**

Civil Action No. H–95–5362.

United States District Court,
S.D. Texas,
Houston Division.

July 5, 1996.

Oliver S. Heard, Jr., Heard Goggan Blair & Williams, San Antonio, TX, for plaintiff.

James G. Munisteri, Sewell & Riggs, Houston, TX, for defendant.

### MEMORANDUM AND ORDER OF PARTIAL SUMMARY JUDGMENT

WERLEIN, District Judge.

Pending are Defendant's Motion for Reconsideration of the Denial of its Motion for Summary Judgment (Document No. 29) and Defendant's Motion to Sever and Abate Sub-ject to Ruling on Defendant's Motion for Reconsideration (Document No. 31). After having carefully considered the arguments and authorities of counsel, as well as the summary judgment evidence, the Court is of the opinion that Defendant's Motion for Reconsideration should be GRANTED, that Defendant's Motion for Summary Judgment (Document No. 17) should be GRANTED, and that Defendant's Motion to Sever and Abate should be DENIED as Moot.

### I. Background

The undisputed facts and procedural history of this case are as follows:

Tom Wasson is President of Tom's Red Hot Jewelry Company, a San Antonio, Texas-based wholesale jewelry company that sells to small jewelry stores in the southern United States. Wasson often conducts business by traveling to such stores with varying amounts of inventory. On July 18, 1994, Wasson rented a car in San Antonio and made such a trip to Houston, Texas, bringing with him inventory with a value of approximately $280,000.00. Wasson made several calls on Houston customers that day and the next day, July 19, 1994. After leaving a customer's store in the late afternoon on the 19th, Wasson prepared to head back to San Antonio. Just outside the Houston city limits, Wasson pulled into a service station to purchase gasoline for the trip home. After refueling the car, Wasson went inside the station to pay.

After waiting a minute or less in line, Wasson noticed a black car pull up behind his rental car. Because the gasoline pumps were crowded with vehicles, Wasson decided to return to his car to move it to allow the black car access to the pump. As Wasson approached his car, the black car sped off and a customer informed Wasson that someone had stolen something from the trunk of Wasson's car. The thieves had broken the passenger side window, opened the glove compartment and accessed the trunk release. The jewelry was gone and neither it nor the thieves were ever found. Wasson states in his affidavit that his loss totaled $268,000.00.

Wasson thereafter filed a loss claim on an insurance contract, Policy No. NA0225793,

that Tom's Red Hot Jewelry Company and American Stone Diamond, Inc. had with certain Underwriters at Defendant Lloyds of London ("the Policy"). Defendant denied the claim, asserting that because Wasson was not actually in or upon the car when the theft occurred, the following exclusionary language of the Policy precluded coverage:

This Insurance insures against all risks of loss or damage to the above described property arising form (sic) any cause whatsoever

EXCEPT:

.    .    .    .    .

(I) Loss or damage to property insured hereunder while in or upon any automobile, motor-cycle or any other vehicles unless, at the time of loss or damage occurs, there is actually in or upon such vehicle, the Assured, or a permanent employee of the Assured, or a person whose sole duty it is to attend the vehicle.

Wasson and Tom's Red Hot Jewelry Company thereafter filed suit against Defendant in the 225th Judicial District Court of Bexar County, Texas, asserting causes of action for breach of contract, breach of covenant of good faith and fair dealing, fraud, constructive fraud, and breach of fiduciary obligations.[1] Defendant removed the case to the U.S. District Court for the Western District of Texas based on diversity jurisdiction, filed a motion to transfer venue to the Southern District of Texas, and filed a motion for summary judgment on the breach of contract claim. Plaintiff responded to the summary judgment motion by asserting: (1) that the "in or upon the vehicle" language of the Policy should include "normal, essential daily activities such as buying gasoline for a car;" (2) that the exclusion is at least ambiguous with regard to coverage for such activities [2]; and (3) that even if unambiguous, as applied to the facts of this case, the exclusion is unconscionable.

By Order signed November 3, 1995, the District Court for the Western District of Texas denied Defendant's Motion for Summary Judgment and granted Defendant's Motion to Transfer Venue to this Court. After the case was transferred, Defendant filed the pending Motion to Reconsider the denial of its summary judgment motion, and Plaintiff responded in opposition. Both the Motion for Summary Judgment and the Motion for Reconsideration have been fully briefed by both parties.

## II. *Discussion*

### A. *The Motion to Reconsider Standard*

■ The Fifth Circuit holds that "because the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir.1990), *citing* Fed.R.Civ.P. 54(b). Such matters are left to the trial court's discretion, *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 356 n. 62 (5th Cir.1989), and this discretion to reconsider prior orders in the interest of justice and economy extends to prior rulings of another judge in the same case. *Abshire v. Seacoast Products, Inc.*, 668 F.2d 832, 837–38 (5th Cir.1982).

■ Despite the considerable leeway granted to district courts to reconsider prior orders in a case, principles of comity make one reluctant to disturb the prior ruling of another district court. However, as the court that will try this case if it cannot be decided as a matter of law, there is an obligation—once a motion to reconsider is filed—at least to satisfy oneself that the prior ruling is correct and that valuable judicial and party resources will not be wasted on an unnecessary trial. For the reasons set forth below, and applying the summary judgment

---

1. American Stone Diamond, Inc., an insured on the policy and evidently the party that sustained the actual loss, has been substituted for Wasson and Tom's Red Hot Jewelry Company as the party Plaintiff. Wasson was an agent of American Stone Diamond, Inc.

2. While Plaintiff never used the word "ambiguous," this would appear to be the import of its argument that fact issues exist as to whether its interpretation of the exclusionary language of the Policy is a reasonable one.

standard described below, the Court concludes on reconsideration that Defendant's Motion for Summary Judgment should be granted.

## B. *The Summary Judgment Standard*

Rule 56(c) provides that "[summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of informing the district court of the basis for the motion, and identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

■ Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Id.* at 323–27, 106 S.Ct. at 2553–54. A party opposing a properly-supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). Unsubstantiated assertions that a fact issue exists will not suffice. *See Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1442 (5th Cir.1993); *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992). The nonmovant "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Krim,* 989 F.2d at 1442.

■ In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. *Anderson,* 477 U.S. at 253–57, 106 S.Ct. at 2513–14. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, summary judgment is proper. *Kelley v. Price Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir.1993), *cert. denied,* 510 U.S. 1043, 114 S.Ct. 688, 126 L.Ed.2d 656 (1994), *citing Matsushita,* 475 U.S. at 576–78, 106 S.Ct. at 1351. On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id., citing Anderson,* 477 U.S. at 249–51, 106 S.Ct. at 2511.

■ Finally, even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. *Accord, Veillon v. Exploration Services, Inc.,* 876 F.2d 1197, 1200 (5th Cir.1989); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2728 (1983).

## C. *Defendant's Summary Judgment Motion*

Defendant's Motion for Summary Judgment relies upon the undisputed facts of this case as set out in Plaintiff's Petition and Brief of Undisputed Facts, and which are summarized in the Background section of this Memorandum and Order. While Plaintiff withdrew its initial stipulation that Wasson was not "actually in or upon" the rental car at the time of the theft so as not to waive the argument that such language should include "normal, essential daily activities such as buying gasoline for a car," Plaintiff does not deny that Wasson was not literally, physically, in or upon the car at the time of the theft. Based upon this undisputed fact, Defendant argues that the unambiguous Policy exclusion regarding this type of loss warrants judgment in Defendant's favor on Plaintiff's breach of contract claim.

■ Under Texas law, the primary concern of a court in construing a written contract is to give effect to the intentions of the parties as expressed in the instrument. *Na-*

*tional Union Fire Ins. Co. v. CBI Industries, Inc.,* 907 S.W.2d 517, 520 (Tex.1995). The determination of whether terms in a contract are ambiguous is a question of law to be decided by the court. *Id.* A contract is ambiguous only "when its meaning is uncertain and doubtful or it is reasonably susceptible of more than one meaning." *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). Parol evidence of the parties' intentions or interpretations regarding contract terms is not admissible for purposes of creating an ambiguity. *National Union,* 907 S.W.2d at 520–21. Only after a court determines that terms in a contract cannot be given a certain and definite legal meaning, and are therefore ambiguous, can a question of fact arise as to the meaning of the terms. *Coker,* 650 S.W.2d at 393–94.

▇▇▇▇ The contractual language at issue in this case states that Defendant will not cover property losses from vehicles unless, at the time of the loss, "there is actually in or upon such vehicle, the Assured, or a permanent employee of the Assured, or a person whose sole duty it is to attend the vehicle." Courts have consistently held nearly identical policy language to be unambiguous and, based upon such exclusions, have denied coverage to insureds who were not literally in or upon their vehicles at the time of the losses, even though the insureds may have been only a short distance away from the vehicle, watching the vehicle, or absent from the vehicle for only a short period of time. *See, e.g., Williams v. Fallaize Ins. Agency, Inc.,* 220 Ga.App. 411, 469 S.E.2d 752 (1996) (exclusion applicable where insured was in store 25 feet from vehicle at time of theft); *Wideband Jewelry Corp. v. Sun Ins. Co. of N.Y.,* 210 A.D.2d 220, 619 N.Y.S.2d 339 (1994) (exclusion applicable where insured's employee was six feet from vehicle at time of theft); *Jerome I. Silverman, Inc. v. Lloyd's Underwriters,* 422 F.Supp. 89 (S.D.N.Y.1976) (exclusion applicable where insured was temporarily away from vehicle at time of theft); *Revesz v. Excess Ins. Co.,* 30 Cal.App.3d 125, 106 Cal.Rptr. 166 (1973) (exclusion applicable where insured was getting directions a few feet from vehicle at time of theft); *Royce Furs, Inc. v. Home Ins. Co.,* 30 A.D.2d 238, 291 N.Y.S.2d 529 (1968) (exclusion applicable where insured was registering inside hotel for a few minutes while vehicle was six to ten feet outside hotel at time of theft); *American Charm Corp. v. St. Paul Fire & Marine Ins. Co.,* 56 Misc.2d 574, 289 N.Y.S.2d 383 (1968) (exclusion applicable where insured was in his home with vehicle locked in adjacent garage at time of theft); *Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co.,* 235 Minn. 243, 50 N.W.2d 629 (1951) (exclusion applicable where insured was away from vehicle for a few minutes to use bathroom and drink cup of coffee at time of theft). *See especially JPM Associates, Inc. v. St. Paul Fire & Marine Ins. Co.,* 109 Md.App. 343, 674 A.2d 562 (1996) (exclusion applicable where insured was inside service station paying for gasoline at time of theft).

Plaintiff cites, and the Court is aware of, no published cases holding contrary to the authority cited above. The Court otherwise discerns no basis for concluding that these cases are wrongly-decided. Indeed, the use of the word "actually" in the requirement that the assured or properly-designated person be "actually in or upon" the vehicle at the time of loss belies any contention that constructive possession of the type urged by Plaintiff can avoid the exclusion. *See Royce Furs,* 291 N.Y.S.2d at 531 (The "in or upon the vehicle" language of the coverage exclusion "is prefixed by the word 'actually.' That word must be given a meaning."); *Revesz,* 106 Cal.Rptr. at 168 (Agreeing with courts that "placed great emphasis on the word 'actually,' indicating that it clearly negates constructive presence and possession."). *See also Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n, Inc.,* 783 F.2d 1234, 1238 (5th Cir.1986), *citing Blaylock v. Am. Guarantee Bank Liab. Ins. Co.,* 632 S.W.2d 719, 722 (Tex.1982) ("[W]e attempt to construe a contract so as to avoid rendering any of its terms meaningless."); *Praeger v. Wilson,* 721 S.W.2d 597, 601 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.) ("A construction of the writing which renders a clause meaningless is unreasonable and, therefore, is not preferred by the court."). Accordingly, the Court concludes as a matter of law that the exclusionary language of the Policy at issue is unambiguous and, under the undisputed

facts of this case, precludes coverage for Plaintiff's loss.

■■■■ Plaintiff argues, however, that even if the exclusionary language of the Policy facially appears to exclude coverage, the language is unenforceable because, under the facts of this case, the exclusion is unconscionable. Under Texas law, the party asserting unconscionability of contract bears the burden of proving both the substantive unconscionability and the procedural unconscionability of the contract at issue. *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.,* 844 F.2d 1174, 1184 (5th Cir. 1988).[3] The question of contract unconscionability is a question of law to be decided by the court. *Id.; Tri–Continental Leasing Corp. v. Law Office of Richard W. Burns,* 710 S.W.2d 604, 609 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). "A court may find substantive unconscionability if the terms of the contract are one-sided or oppressive." *Arkwright,* 844 F.2d at 1184. "A court may find procedural unconscionability if the plaintiff presents evidence of the seller's 'overreaching or sharp practices' combined with the buyer's 'ignorance or inexperience.'" *Id., quoting Earman Oil Co. v. Burroughs Corp.,* 625 F.2d 1291, 1300 (5th Cir.1980).

■■■■ The entirety of the evidence presented regarding Plaintiff's contract defense of unconscionability is the affidavit of Tom Wasson, which reads in relevant part as follows:

> The insurance policy has a clause that states if the insured is not in the car at the time of the loss, it does not cover any losses. I feel this is very unfair.

> I do not know of any other insurance company that does not have the exclusion clause in it.

I do not like to carry a bag with me into any business establishment because I feel it makes me a target to criminals, especially if I am dressed in a business suit.

There are other ways of travelling to the various jewelry stores, such as flying, but once you are on the ground, you need to travel by car to get to the different jewelry stores.

There is tremendous pressure in this line of work as one is in constant fear and needs to be constantly alert. There have been incidence [sic] where several salesmen have been killed in this line of work.

From this evidence, Plaintiff argues that Wasson was left with no meaningful choice in two primary respects: (1) Wasson had to accept an insurance policy with an unfair exclusion clause, and (2) Wasson, at times, briefly had to leave his vehicle with jewelry inside in order to engage in normal, essential activities such as going to the bathroom and putting gasoline in his car.

Plaintiff American Stone Diamond, Inc. was named as the first insured under the Policy; Tom's Red Hot Jewelry Company, of which Wasson was president, was named as the second insured. No summary judgment evidence has been submitted on the role that Plaintiff had in the acquisition of the insurance policy at issue. Moreover, no argument has been made that Plaintiff was not a fully-informed and sophisticated New York jewelry wholesaler, well-experienced in acquiring insurance policies such as the one at issue. Thus, no evidence or argument has been submitted that the exclusionary language of the Policy at issue is unenforceable because, as applied to American Stone Diamond, Inc., the exclusion is unconscionable.

The entirety of Plaintiff's argument of unconscionability rests upon Plaintiff American Stone Diamond, Inc.'s agent, Wasson, and

---

**3.** In *Arkwright* the Fifth Circuit stated the requirements of Texas law with regard to the contract defense of unconscionability. Although *Arkwright* involved interpretation of the Texas codification of the Uniform Commercial Code, Tex.Bus. & Com.Code Ann. § 2.302 (Vernon 1994), "the provision pertaining to unconscionability 'has been applied to numerous transactions outside the coverage of Article 2 of the Code.'" *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 498 (Tex.1991) (Gonzalez, J., concurring), *quoting* J. Calamari & J. Perillo, *The Law of Contracts* § 9–39 at 420 (3d ed. 1987). The Northern District of Texas has expressly applied *Arkwright* to a case involving the alleged unconscionability of an exclusionary provision of an insurance contract. *Bartley v. Nat'l Union Fire Ins. Co.,* 824 F.Supp. 624, 634–35 (N.D.Tex. 1992). This Court does likewise.

the implied argument that Wasson, not Plaintiff, acquired the Policy. Even assuming that Wasson did in fact personally acquire the Policy, Plaintiff has failed to meet its burden of demonstrating that the exclusion at issue is unconscionable.

First, as to Wasson's claimed lack of choice, Wasson does not state that he had to have insurance in order to do business—that is, that self-insurance was not a viable option. Nor does Wasson state that he could not have negotiated with Defendant for greater coverage through the payment of higher premiums. While Wasson states that he knows of no insurer that does not have a similar exclusion, Wasson gives no details as to the extent of his search and does not state whether he attempted to negotiate with these other insurers for greater coverage through the payment of higher premiums.[4]

Second, what Plaintiff describes as a lack of meaningful choice under the Policy is really just an allocation of the risk. The Policy did not prevent Wasson from going to the bathroom or putting gasoline in his car, but rather shifted the risk of loss back to Plaintiff during those brief periods. *See Bartley,* 824 F.Supp. at 635 ("[T]he portion of the ... insurance contract which Plaintiffs argue is unconscionable is, in fact, merely an exclusion from coverage. Exclusions from coverage in insurance contracts for particular occurrences are hardly unknown in the insurance field and cannot easily be characterized as per se unreasonable. Instead, the [ ] exclusion [at issue] appears to be merely an allocation of the risk agreed to by two commercial entities."); *Steinzeig v. Mechan-*

*ics and Traders Ins. Co.,* 297 S.W.2d 778, 783 (Mo.Ct.App.1957) ("It is perfectly reasonable for insurance companies to limit the location of the property and the circumstances under which coverage will be provided by its policy.").

In *Ruvelson,* the Minnesota Supreme Court specifically noted that the plaintiff's decision to leave his car and get a cup of coffee in order to remedy the serious medication side effects from which he was suffering was a reasonable decision that avoided significant risk to the plaintiff and to other on the road and to the insured jewels and merchandise. 50 N.W.2d at 631. Notwithstanding the plaintiff's difficult situation and the parade of horribles proposed by counsel, the *Ruvelson* Court found that the exclusion was effective to deny coverage for the subsequent theft of the jewels and merchandise from the locked car, reasoning as follows:

It is claimed that a strict construction of the language used by the parties in this exception would lead to an absurd and unreasonable result. In support of this contention, plaintiffs cite various hypothetical situations in which an assured or his employee would be compelled to leave the car, either to secure help in an emergency or where he involuntarily would be required to leave the car unattended for some reason or other beyond his control. It is entirely possible under such circumstances that it would work a hardship on the assured if a loss should occur, but the plain fact is that it involves a risk which was assumed by the assured and not by the insurer. The result is no different

---

**4.** The fact that Wasson apparently had some knowledge of the prevalence of the clause in other insurance policies implies that he was aware of the clause and did some shopping around. This evidence is inconsistent with Plaintiff's required procedural unconscionability showing of Wasson's ignorance or inexperience. The evidence of record otherwise shows that Wasson owns his own company, transacts business with many clients throughout the southern United States, and deals in inventories with a value in at least the hundreds of thousands of dollars. *See United Teacher's Assoc. Ins. Co. v. MacKeen & Bailey, Inc.,* 847 F.Supp. 521, 540 n. 28 (W.D.Tex.1994) ("Finally, because both parties are sophisticated businessmen, the Court concludes they were fully aware of the risks and

ramifications of the agreement and thus their claims of unconscionability are invalid."). Additionally, the evidence that other insurance companies include the exclusion clause in policies indicates, if anything, that the clause is common in the industry and that the inclusion of the clause in the Policy in this case was not the result of overreaching or sharp practices that took special advantage of Wasson's ignorance or inexperience. *See Am. Casualty Co. v. FDIC,* 944 F.2d 455, 460 (8th Cir.1991) ("Nor can we agree that the new contract was unconscionable. It is a bargain struck by adult business people. We have no reason to suppose that a better deal could have been gotten for the bank from any other insurer.").

from that of any other loss which occurs as a result of some cause not covered by insurance.

*Id.* at 633–34.

There is no basis to conclude in the instant case that the allocation of the risk provided for in the Policy is oppressive or one-sided. Exclusions in insurance policies generally benefit both parties by lowering premiums for the insured and by protecting the insurer from liability out of proportion to the consideration charged. *See Neil v. Allstate Ins. Co.*, 379 Pa.Super. 299, 549 A.2d 1304, 1310 & n. 4 (1988) ("[T]he effect of exclusionary provisions such as the one here at issue is to make available to consumers homeowners' insurance at competitive premium rates.") ("[T]o take the radical measure of rewriting the policy by invalidating the exclusion clause.... would place insurance companies in the impracticable situation of insuring losses which they have specifically not contemplated and for which they have not funded reserves.").

This is not a case where the exclusion has the effect of creating an illusory contract that insures against a nonexistent risk. With regard to loss by theft, the effect of the exclusion in most, although not necessarily all, cases would seem to be to insure against theft by force or intimidation, but not by stealth. *See Seelig v. St. Paul Fire & Marine Ins. Co.*, 109 F.Supp. 277, 279 (E.D.N.Y. 1953) ("It is apparent that the purpose of the ['in or upon the vehicle' exclusion of the] policy ... was to cover a loss occurring in connection with the hold up of a motor vehicle ....."). While the exclusion certainly reduces the risk to the insurer, *see Princess Ring Co. v. Home Ins. Co.*, 52 R.I. 481, 161 A. 292, 293 (1932) (" 'Opportunity makes the thief.' If Mr. Mark had been in the automobile, probably the thief would not have entered."), the risk that remains insured—essentially armed or strong-arm robbery—clearly is not an insignificant one. *See* Wasson Affidavit at 2 ("There is tremendous pressure in this line of work as one is in constant fear and needs to be constantly alert. There have been incidence [sic] where several salesmen have been killed in this line of work.").

Third, Plaintiff understates Wasson's choices under the Policy. Wasson had it within his power under the very Policy of which he complains to keep the risk of loss on Defendant at all times relevant to the facts of this case.[5] Wasson could simply have assigned a permanent employee to accompany him on the trip to Houston or could have hired a person for the sole purpose of attending to the vehicle on the trip. Wasson would then have been free to leave the car with the jewels inside, while a person authorized by the Policy remained in or upon the vehicle or vice versa. Plaintiff submits no evidence that such a strategy would have been impossibly burdensome.

As noted above, Wasson is presumed to have been aware of the risks and ramifications of the Policy, *see United Teacher's Assoc.*, 847 F.Supp. at 540 n. 28, *Revesz*, 106 Cal.Rptr. at 168, and Wasson's affidavit seems to indicate that Wasson was actually aware of the exclusion clause at issue. Accordingly, the Court can only conclude that with regard to his trip to Houston in July 1994, Wasson made the informed judgment that the expected benefit of keeping the risk of loss on Defendant while Wasson conducted "normal, essential daily activities such as buying gasoline" was outweighed by the expense of hiring a car attendant or tying up a permanent employee with car-sitting duties. Accordingly, Plaintiff cannot now justifiably expect to be relieved of the consequences of Wasson's knowing, but improvident, gamble. "One might as well complain that a futures contract declined in value after the date it was purchased." *Presidio Enterprises, Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 680 n. 13 (5th Cir.1986).

Plaintiff has failed to demonstrate that Defendant, through overreaching or sharp business practices, took advantage of Wasson's inexperience or ignorance and left Wasson with no meaningful choice but to agree to an insurance contract with an oppressive or one-

---

5. At least up to the $200,000.00 coverage limit of the Policy for losses occurring off the premises of Tom's Red Hot Jewelry.

sided coverage exclusion provision. Moreover, Plaintiff has failed to plead or to show any overreaching or sharp business practices by Defendant that rendered Wasson's principal, Plaintiff American Stone Diamond, Inc., with no meaningful choice but to agree to an insurance contract with an oppressive or one-sided coverage exclusion provision. Accordingly, Plaintiff has failed to carry its burden of demonstrating the procedural and substantive unconscionability of the exclusion.

Because the Policy exclusion at issue is not unconscionable and because it unambiguously precludes coverage for Plaintiff's loss, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim.

### D. *Plaintiff's Extra–Contractual Claims*

Defendant also requests that judgment be entered in its favor on Plaintiff's several extra-contractual causes of action. The Court has before it, however, only Defendant's Motion for Reconsideration of the denial of its Motion for Summary Judgment. Defendant's summary judgment motion presented the basis and argument for summary judgment only on Plaintiff's breach of contract claim. Plaintiff has therefore not responded on whether Plaintiff's remaining claims should survive the grant of summary judgment on the breach of contract claim. Although Defendant's argument that the claims do not survive may be correct, and Plaintiff may not disagree, the Court must await a proper submission.

### III. *ORDER*

For the foregoing reasons, it is

ORDERED that Defendant's Motion for Reconsideration of the Denial of its Motion for Summary Judgment (Document No. 29) is GRANTED and, upon reconsideration, Defendant's Motion for Summary Judgment (Document No. 17) is GRANTED on the breach of contract claim. Plaintiff American Stone Diamond Inc.'s claim against Defendant for breach of insurance contract is DISMISSED on the merits. Defendant's Motion to Sever and Abate Subject to Ruling on Defendant's Motion for Reconsideration (Document No. 31) is DENIED as moot.