693 A.2d 832

JMP ASSOCIATES, INC.

v.

The ST. PAUL FIRE & MARINE INSURANCE COMPANY.

No. 72, Sept. Term, 1996.

Court of Appeals of Maryland.

May 12, 1997.

Walter H. Madden, Rockville, for Petitioner.

Harry J. Carleton (Cotter, Fiscella Carleton, on brief), Fairfax, VA, for Respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI and RAKER, JJ., and MARVIN H. SMITH, Judge (retired), Specially Assigned.

MARVIN H. SMITH, Judge, Specially Assigned.

We shall here hold that under the facts in this case the "on" requirement in a jeweler's block policy that an "employee or sales personnel [be] in or on the vehicle at the time of the loss" is ambiguous.[1]  (Emphasis added.)

Petitioner JMP Associates, Inc. (JMP) sued respondent The St. Paul Fire & Marine Insurance Company (St.Paul) in the Circuit Court for Montgomery County for breach of contract under a jeweler's block policy.  We conclude that the trial judge erred in holding the term "in or on" unambiguous and in granting summary judgment in favor of St. Paul. The Court of Special Appeals likewise erred when it affirmed that judgment.  Accordingly, we shall reverse.

In *JMP Assoc. v. St. Paul Fire,* 109 Md.App. 343, 674 A.2d 562 (1996), the intermediate appellate court stated:

> "The relevant facts are undisputed.  JMP is a wholesale jeweler with a principal place of business in Silver Spring, Maryland.  It sells its products to jewelers in other States as well, including to those in North Carolina.

> "In March, 1992, St. Paul issued to JMP a Jeweler's Block Policy, insuring jewels, watches, precious metals, and other stock usual to JMP's business 'against risks of direct physical loss or damage except those listed in the Exclusions—Losses We Won't Cover section.'  One of the exclusions listed in that section stated:

>> '**Unattended vehicle.**  We won't cover loss to property while it is left in or on a vehicle unless you, your employee or sales personnel are in or on the vehicle at the time of the loss.'

(Emphasis added).

---

1.  "The idea of jeweler's block insurance was conceived by a Lloyds of London underwriter at the turn of the century, and provides jewelers with the only adequate coverage for the various risks inherent in their businesses."  Tracy A. Bateman, Annotation, *Construction and Effect of "Jewelers Block" Policies or Provisions Contained Therein,* 22 A.L.R. 5th 579 (1994).

"On March 23, 1994, while this policy was in force, JMP's sales representative, Marty Leibson, was traveling in North Carolina on his way to make a business call in Charlotte. He was carrying in the trunk of his car a collection of jewelry worth about $150,000. Leibson stopped for gas in Shelby, North Carolina. After pumping the gas, he walked over to the check-out station to pay for it, using his credit card. The trunk was locked, and the car was visible. As the cashier rang up the sale, a van pulled in and partially blocked Leibson's view of his car. When the transaction was completed, Leibson returned to his car. The van had left, and Leibson noticed nothing out of the ordinary. He drove on to Charlotte, parked at his customer's store, unlocked the trunk to get his merchandise, and, for the first time, discovered that the cases containing the jewelry were missing. Leibson immediately reported the theft to the proper authorities, but to no avail.

"JMP made a claim on the policy. That claim was rejected on the ground that Leibson was not 'in or on' the vehicle at the time of the loss.

"JMP raises a number of issues in this appeal, but the central one is the proper construction of the word 'on' as it appears in that clause of the exclusion. It seems to be agreed that the loss occurred at the gas station and that Leibson was not 'in' the car when the loss occurred. The question is whether, for purposes of construing the policy, he can be regarded as having been 'on' the vehicle at the time."

*Id.* at 345–46, 674 A.2d at 563. The Court of Special Appeals concluded, " '[O]n' means 'on' and not 'near.' " *Id.* at 350, 674 A.2d at 565. It said it thus "align[ed] [itself] with the majority view" and held that "[t]he [trial] court did not err in applying the exclusion." *Id.*

We granted JMP's petition for certiorari to address the important question here presented.

## The Law

Maryland Rule 2–501(e) provides:

"The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law."

The law relative to summary judgment has been stated and restated by this Court many times. *See, e.g., Goodwich v. Sinai Hosp.*, 343 Md. 185, 206–07, 680 A.2d 1067, 1076–77 (1996); *Heat & Power v. Air Prods.*, 320 Md. 584, 591–92, 578 A.2d 1202, 1205–06 (1990); *King v. Bankerd*, 303 Md. 98, 110–12, 492 A.2d 608, 614–15 (1985); and *Berkey v. Delia*, 287 Md. 302, 304–05, 413 A.2d 170, 171 (1980).

In *King*, Judge Cole said for the Court:

"In reviewing the grant or denial of a motion for summary judgment, we are concerned primarily with deciding whether a material factual issue exists, and in this regard, all inferences are resolved against the moving party. *Lynx, Inc. v. Ordnance Products, Inc.*, 273 Md. 1, 7–8, 327 A.2d 502, 509 (1974); *Salisbury Beauty Schools v. State Board of Cosmetologists*, 268 Md. 32, 40–41, 300 A.2d 367, 374 (1973); *see Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 62, 485 A.2d 663, 671 (1984). If there is a conflict between the inferences that may be drawn from that before the court, summary judgment is not proper. As Judge Smith explained in *Porter v. General Boiler Casing Co.*, 284 Md. 402, 413, 396 A.2d 1090, 1096 (1979) (quoting *Fenwick Motor Co. v. Fenwick*, 258 Md. 134, 138, 265 A.2d 256, 258 (1970)[) ], ' "even where the underlying facts are undisputed, if those facts are susceptible of more than one permissible inference, the choice between those inferences should not be made as a matter of law, but should be submitted to the trier of fact." ' "

*King*, 303 Md. at 110–11, 492 A.2d at 614.

In *Bailer v. Erie Ins.*, 344 Md. 515, 687 A.2d 1375 (1997), Judge Rodowsky recently set forth for the Court the bases for construction of insurance policies:

"Under Maryland law, '[i]nsurance policies, being contractual, are construed as other contracts.' *Bond v. Pennsylvania Nat'l Mut. Casualty Ins. Co.*, 289 Md. 379, 384, 424 A.2d 765, 768 (1981). As such, a court interpreting an insurance policy is to examine the instrument as a whole, focusing on the character, purpose, and circumstances surrounding the execution of the contract. *Pacific Indem. Co. v. Interstate Fire & Casualty Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985). '[W]e accord words their ordinary and accepted meanings. The test is what meaning a reasonably prudent layperson would attach to the term.' *Id.* Unlike the law of some states which construes insurance contracts against the insurer, this Court holds that an insurance contract will be construed against the insurer only when an ambiguity remains after considering the intentions of the parties from the policy as a whole and, if necessary, after admitting and considering any relevant parol evidence. *Cheney v. Bell Nat'l Life Ins. Co.*, 315 Md. 761, 766–67, 556 A.2d 1135, 1138 (1989)."

*Bailer*, 344 Md. at 521–22, 687 A.2d at 1378. To similar effect, see *Collier v. MD–Individual Practice*, 327 Md. 1, 5–6, 607 A.2d 537, 539 (1992) (with the further statement, "If the language is ambiguous, extrinsic evidence may be consulted."); *Pacific Indem. v. Interstate Fire & Cas.*, 302 Md. 383, 388–89, 488 A.2d 486, 488–89 (1985); *Truck Ins. Exch. v. Marks Rentals*, 288 Md. 428, 435, 418 A.2d 1187, 1190 (1980). In *Collier*, this Court made the specific statement, "In Maryland insurance policies ordinarily are construed in the same manner as contracts generally." 327 Md. at 5, 607 A.2d at 539.

In *Orkin v. Jacobson*, 274 Md. 124, 332 A.2d 901 (1975), we said:

"Our predecessors in *Waters v. Griffith*, 2 Md. 326, 333 [ (1852) ], said that '[w]e must give, if we can, some distinct meaning to every word employed in the contract. . . .' To like effect see 17 Am.Jur.2d Contracts § 259 (1964), citing, among other cases, *Nat. Fire Ins. Co. v. Crane*, 16 Md. 260 (1860):

'§ 259. **Giving effect to entire con tract, and all its parts and language.**

'It is a fundamental rule of contract construction that the entire contract, and each and all of its parts and provisions, must be given meaning, and force and effect, if that can consistently and reasonably be done. An interpretation which gives reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable. So far as reasonably possible, effect will be given to all the language and to every word, expression, phrase, and clause of the agreement. No word or clause should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument. A construction will not be given to one part of a contract which will annul another part, unless such a result is fairly inescapable. Comparatively unimportant parts or provisions which may be severed from the agreement without impairing its effect or changing its character will be suppressed or subordinated if in that way, and only in that way, the agreement can be sustained and enforced.' *Id.* at 660–62."

*Orkin,* 274 Md. at 129–30, 332 A.2d at 904. Similar statements are found in 43 Am.Jur.2d Insurance § 275 (1982) and 17A Am.Jur.2d Contracts § 386 (1991). To like effect, see *Sagner v. Glenangus Farms, Inc.,* 234 Md. 156, 167, 198 A.2d 277, 283 (1964).

## The Cases

We have reviewed each of the cases cited by the Court of Special Appeals and many other cases. We shall discuss each of these cases other than an unreported Ohio intermediate appellate court opinion that was decided contrary to the view espoused by our intermediate appellate court and by St. Paul. We find no clear cut majority view applicable to this case. Appellate cases heretofore decided really shed little light on the issue here because those cases represent situations or language so substantially different from that in the case

before us. Only two of the cases, *Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co.*, 235 Minn. 243, 50 N.W.2d 629 (1951), and *Princess Ring Co. v. Home Ins. Co.*, 52 R.I. 481, 161 A. 292 (1932), are from courts of last resort. None of the cases is from a United States Court of Appeals.

St. Paul puts great store by *Princess Ring*, particularly its statement " '[o]pportunity makes the thief.' " 52 R.I. at 484, 161 A. at 293. The statement, however, has to be taken in the context of the facts of the case. The court there said relative to the insurance policy:

> "It stated that it covered loss of the insured property arising from any cause except '... loss or damage to property insured hereunder whilst in or upon any automobile ... unless such conveyance is attended at the time the loss occurs by a permanent employee of the assured, or by a person whose sole duty is to attend the conveyance and who at such time shall remain in or upon the conveyance ...' "

*Id.* at 483, 161 A. at 293. The facts were that the jewelry company's permanent employee went to visit his brother. Two containers of jewelry were in the car. When he arrived at his brother's house, the brother's father-in-law was outside. He asked the father-in-law to watch the car. When the employee went to ring the doorbell at his brother's home, he saw someone jump into the car and drive away. The court found that the permanent employee "was not in attendance upon the automobile at the time the jewelry was stolen. He was about forty feet from the automobile, attending to another matter." *Id.* at 484, 161 A. at 293. As to the father-in-law, the court said:

> "Does the evidence prove that Mr. Mark was 'a person whose sole duty is to attend the conveyance and who at such time shall remain in or upon the conveyance'? The phrase 'shall remain in or upon the conveyance' fixed the place where the person attending the automobile was required to be when the property insured was 'in or upon any automobile.' The same phrase is used both in reference to the property insured and the person attending the automobile.

Both must be 'in or upon' the automobile. 'Opportunity makes the thief.' If Mr. Mark had been in the automobile probably the thief would not have entered. There is no evidence that the thief then knew the jewelry was in the automobile.

"We are of the opinion that the evidence proves that plaintiff's loss was not covered by the insurance policy because plaintiff failed to comply with the requirements contained in the exception above quoted."

*Id.* 484–85, 161 A. 292.

In *Ruvelson,* the policy read as to an exclusion:

" '*Loss of or damage to property insured hereunder whilst in or upon any automobile, motorcycle or any other vehicle* unless, at the time the loss occurs, there is actually in or upon such vehicle, the assured or a permanent employee of the assured, or a person whose sole duty it is to attend the vehicle . . . .' "

235 Minn. at 244, 50 N.W.2d at 630. In that case, the employee began to feel drowsy because of medication he was taking. The employee went to a hotel to procure a cup of coffee to serve as an antidote for the medicine which he had taken. He had first securely locked his car with the suitcases containing the jewels and merchandise contained in the car. He found one of the car windows broken and the jewelry missing upon his return. The court, upholding denial of the claim, stated:

"The language used in the exception now before us is clear and unequivocal. It requires that the assured, or a permanent employe[e] of assured, or a person whose sole duty it is to attend the vehicle be actually in or upon the automobile when the loss occurs."

*Id.* at 251, 50 N.W.2d at 633.

We have found but two cases addressing the issue of ambiguity. In one case the policy language involved was substantially different from that in the case before us. Moreover, it was not "in or on" that was construed but "unattended." In *Zurich Midwest v. St. Paul Fire & Marine,* 159

Ill.App.3d 961, 111 Ill.Dec. 813, 513 N.E.2d 59 (1987), the exclusion read:

> " ' *Unattended Vehicle.* We won't cover loss to property while such is left in or on a vehicle unless you, your employee or sales personnel are attending the vehicle at the time of the loss.' "

*Id.* at 963, 111 Ill.Dec. at 814, 513 N.E.2d at 60. There, as the court put it:

> "After his last stop in Wisconsin, Gutman made a brief stop at a doughnut store with windows which were wide open and without curtains. He stayed within approximately 40 feet of his locked car and his car was out of sight for less than one minute, while he used the restroom."

*Id.* at 962, 111 Ill.Dec. at 814, 513 N.E.2d at 60. The court held:

> "The 'Unattended Vehicle' clause in the case at bar is not subject to double or multiple meanings. As defined in Webster's New International Dictionary 2482 (3d ed.1966), 'unattended' means 'lacking a guard, escort, caretaker, or other watcher.' Here, when Gutman went into the restaurant, albeit with the car securely locked, and lost sight of the car when he went into the washroom, he no longer was attending it. Under these facts, the car was unattended."

*Id.* at 963, 111 Ill.Dec. at 814, 513 N.E.2d at 60.

The second case to address ambiguity is *Tivoli Corp. v. Jewelers Mut. Ins. Co.*, 932 S.W.2d 704 (Tex.Ct.App.1996). The court set forth the exclusion in the policy:

### "Property Excluded

We do not cover property:

\*      \*      \*      \*      \*      \*

10. *In or on a vehicle that is not attended. An attended vehicle has a person actually in or on the vehicle. This*

*person must be you, your employee, or a person whose duty it is to attend it.* (Emphasis added).

*Id.* at 707. The court set forth the facts:

"On December 9, 1991, George Kessler, Tivoli's wholesale jewelry salesman, who was traveling between sales locations, placed jewelry valued at $78,000 in the trunk of his car. Kessler stopped at a check cashing business owned by his friend in Houston. Parking in the parking lot and locking the car, Kessler left the jewelry in the trunk. Inside the building, he used the restroom located in a locked security area behind the lobby. Exiting the restroom, Kessler stood by a window with his friend in the secured area overlooking the check cashing business's lobby. Kessler saw thieves taking the jewelry from his car's trunk. He ran from the secured area through the lobby and attempted unsuccessfully to stop the thieves as they drove away."

*Id.*

The court said, "We must determine whether the insurance claim was properly denied. One issue is whether the 'unattended vehicle' exclusion contained in the insurance policy is ambiguous, as maintained by Tivoli and Goldman, so as to preclude summary judgment." *Id.* at 710. In denying the claim, it said:

"We hold in this case the salesman did not have the jewelry in his possession at the time of the theft. We also hold the property was left in an unattended vehicle when he went into the building."

*Id.* at 711.

In *Jerome I. Silverman, Inc. v. Lloyd's Underwriters,* 422 F.Supp. 89 (S.D.N.Y.1976), the policy excluded:

" '... Loss of or damage to property insured hereunder while in or upon any automobile, motorcycle or any other vehicle unless, at the time the loss or damage occurs, there is actually in or upon such vehicle, the Assured, or a permanent employee of the Assured, or a person whose sole duty it is to attend the vehicle....' "

*Id.* at 90. In that case, the salesman parked his car in a parking garage. He left his keys in the ignition so that the parking attendant could move the car if necessary. He told the attendant that he "would give him an extra tip if he would watch the car." *Id.* The salesman "walked about one and one-quarter blocks to a customer." *Id.* Later, after sitting in the car for a period, he went to a telephone booth about fifteen feet in front of the car where he said he could view the car. Yet later he went to see another customer. The jewelry was missing when the salesman finally returned. The court concluded that "no loss occurred while [the salesman] was in or around the automobile" and that the parking lot attendant "[q]uite simply [was] not 'a person whose sole duty it [was] to attend the vehicle....'" *Id.*

In *Williams v. Fallaize Ins. Agency,* 220 Ga.App. 411, 469 S.E.2d 752 (1996), the policy stated:

> "'This policy does not insure loss of or damage to property: 3) in or upon any automobile or any other vehicle unless at the time the loss or damage occurs there is actually in or upon the vehicle, the Assured, or a person whose sole duty it is to attend the vehicle.'"

*Id.* at 412, 469 S.E.2d at 754. The saleswoman was inside a store delivering jewelry to a customer at the time the jewelry was stolen. She was at least twenty-five feet away from her car. While she was in the store, someone smashed her car window, punctured the tires, released the trunk, and stole a briefcase containing the jewelry. The court said, "[I]t is apparent that at the time of loss, [the saleswoman] was neither 'actually in' nor 'upon' her vehicle." *Id.* at 414, 469 S.E.2d at 755.

In *Steinzeig v. Mechanics & Traders Ins. Co.,* 297 S.W.2d 778 (Mo.Ct.App.1957), the policy provision excluded loss "'... unless at the time the loss occurs there is actually in or upon such vehicle, the Assured or a permanent employee of the Assured ...'." *Id.* at 779. In that instance, the car was left unattended from 9:30 p.m. until sometime the following morning. The court said, "[U]nder the facts in this case, the

plaintiffs cannot recover, because the loss occurred from an automobile at a time when it was not occupied by the insured or a permanent employee of the insured." *Id.* at 782.

In *William Kinscherf Co. v. St. Paul Fire & M. Ins. Co.*, 234 A.D. 385, 254 N.Y.S. 382 (1931), the policy excluded " '[l]oss or damage to property insured [t]hereunder whilst in or upon any automobile, motorcycle or horse drawn vehicle unless such conveyance is attended at the time the loss occurs by a permanent employee of the assured....' " *Id.* 254 N.Y.S. at 383. The employee left the car parked at the curb of a street while he called on a customer and had lunch. The court said that "under the circumstances alleged in the complaint, bill of particulars, and proof of loss, [the employee] was not in attendance and no person was present 'to attend the conveyance' while the loss occurred." *Id.* 254 N.Y.S. at 384. Hence, it ruled against the claim.

*Royce Furs, Inc. v. Home Ins. Co.*, 291 N.Y.S.2d 529, 30 A.D.2d 238 (App.Div.1968), involved a furrier's block policy. In that case liability was denied under the policy " '... unless at the time the theft occurs there is *actually in or upon such vehicle*, the insured or a permanent employee of the insured or a person whose sole duty it is to attend such vehicle....' " *Id.* 291 N.Y.S.2d at 530. The court recited the facts:

"The vice-president drove up to a certain hotel and parked the car in a position which was approximately six to 10 feet from the hotel's entrance; he locked the car, checked the furs which were in the trunk, and saw that the trunk was locked. He then went to the registration desk. There was testimony that adjacent to the desk was a large window from which the car could be seen. After registering, which took but a few minutes, he started to walk back to the car. As he did so a man 'bolted' into the car, started it up and drove off. This all took but a few seconds. Some time later the car was found and the furs were gone."

*Id.* The court said, in denying recovery:

"[T]here was no employee of the insured in or upon the vehicle, nor was there present the insured or a person

whose sole duty it was to attend the vehicle. It should be noted that the language provides for the necessity of having a person in or upon such vehicle is prefixed by the word 'actually.' That word must be given a meaning."

*Id.* 291 N.Y.S.2d at 531.

There are a number of cases that have focused on the presence in a policy of the adverb "actually." *Revesz v. Excess Ins. Co.,* 30 Cal.App.3d 125, 106 Cal.Rptr. 166 (1973), involved a salesman's floater policy. Recovery was to be denied " '. . . unless, at the time the loss or damage occurs, the assured is actually in or upon such vehicle and the merchandise is in his possession.' " *Id.* at 127, 106 Cal.Rptr. at 167. The court recited the facts:

"In order to get directions to [his ultimate destination], he parked his car at a curb in front of a service station, locked the ignition, got out of the car, taking his car keys with him, and walked around in front of his auto to the parkway. Thirty seconds after leaving the car and while [the salesman] was still within two to three feet thereof, he heard a door slam and the motor of his car start; he turned and saw an unidentified man drive off at high speed."

*Id.* at 126–27, 106 Cal.Rptr. at 167. The court denied liability, saying:

"At the time of the loss the jewelry was not in his 'personal custody' and he was not 'actually in or upon' his vehicle, as required by the policies, in any sense of these words. The temporary abandonment is clearly evidenced by the fact that the thief was able to take possession of the vehicle and its contents without interference from him."

*Id.* at 129, 106 Cal.Rptr. at 168.

In *Greenberg v. Rhode Island Ins. Co.,* 188 Misc. 23, 66 N.Y.S.2d 457 (1946), a policy excluded a claim " '. . . unless, at the time the loss occurs, there is actually in or upon such vehicle the Assured or a permanent employee of the Assured, or a person whose sole duty it is to guard the property. . . .' " *Id.* 66 N.Y.S.2d at 459. The loss occurred while the supposed custodian was in a restaurant with a friend. The court said

that "prior to entering the restaurant one of the party requested a stranger standing nearby to watch the car and promised to pay him a dollar for his services...." *Id.* 66 N.Y.S.2d at 458. One of the doors of the car had been pried open and the property in question had been stolen when the party returned about an hour later. The court said:

> "We must give due recognition to the use of the word 'actually' and must conclude it was inserted and intended for a definite purpose—to indicate the intention that presence in reality—presence in fact—was required and not a constructive or theoretical one. If we do not adopt that view then care and accuracy in the use of words is a meaningless effort."

*Id.* 66 N.Y.S.2d at 459.

Recovery was permitted in *Lackow v. Insurance Co.*, 382 N.Y.S.2d 529, 52 A.D.2d 579 (1976). The policy provision in question required that the employee " 'actually [be] in or upon such vehicle' at the time of the loss." *Id.* 382 N.Y.S.2d at 530. The court held that the "employee's position at the time of the robbery, at the rear of the vehicle opening its trunk, was in compliance with the 'Jeweler's Block Policy' provision." *Id.* 382 N.Y.S.2d at 529–30. No reasoning is set forth.

*Wideband Jewelry v. Sun Ins. Co.*, 619 N.Y.S.2d 339, 210 A.D.2d 220 (1994), likewise contains no analysis. The exclusion denied coverage " '... unless [the assured], an employee, or other person whose only duty is to attend the vehicle, are actually in or upon such vehicle at the time of the theft.' " *Id.* 619 N.Y.S.2d at 339. The employee was approximately six feet from his vehicle when the thieves opened the trunk and stole the jewelry in question. The court said, "The plaintiff's employee was clearly not 'actually in or upon' the vehicle at the time of the theft...." *Id.*

The policy in *Dreiblatt v. Taylor*, 188 Misc. 199, 67 N.Y.S.2d 378 (1947), was similar to a jeweler's block policy in that the policy there excluded " 'loss of the property insured [t]herein from road vehicles of every description when such vehicles are left unattended.' " *Id.* 67 N.Y.S.2d at 379. The vehicle in

question was watched from the front window of an apartment on the first floor of an apartment house before which it was parked. The court said:

"The attendant, assuming the watcher to be such, was not shown to be actually within or upon the automobile, or so near thereto as to be able to observe a theft of the contents. The term 'unattended' has a connotation of lack of due diligence or protection which would exclude coverage."

*Id.*

*American Stone Diamond, Inc. v. Lloyds of London,* 934 F.Supp. 839 (S.D.Tex.1996), involved yet another case in which the policy provision required that "there [be] actually in or upon such vehicle, the Assured, or a permanent employee of the Assured, or a person whose sole duty it is to attend the vehicle." *Id.* at 841. There the representative of the wholesale jewelry company involved pulled into a service station to purchase gasoline for the trip home. After refueling the car, he went inside the station to pay. As the court put it,

"[A]fter waiting a minute or less in line, [he] noticed a black car pull up behind his rental car. Because the gasoline pumps were crowded with vehicles, [he] decided to return to his car to move it to allow the black car access to the pump. As [he] approached his car, the black car sped off and a customer informed [the custodian] that someone had stolen something from the trunk of [the] car [in question]."

*Id.* at 840. The court said in denying liability:

"Indeed, the use of the word 'actually' in the requirement that the assured or properly-designated person be 'actually in or upon' the vehicle at the time of loss belies any contention that constructive possession of the type urged by Plaintiff can avoid the exclusion. *See Royce Furs,* 291 N.Y.S.2d at 531 (The 'in or upon the vehicle' language of the coverage exclusion 'is prefixed by the word "actually." That word must be given a meaning.'); *Revesz,* 106 Cal.Rptr. at 168 (Agreeing with courts that 'placed great emphasis on the word "actually," indicating that it clearly negates con-

structive presence and possession.'). *See also Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n, Inc.,* 783 F.2d 1234, 1238 (5th Cir.1986), *citing Blaylock v. Am. Guarantee Bank Liab. Ins. Co.,* 632 S.W.2d 719, 722 (Tex.1982) ('[W]e attempt to construe a contract so as to avoid rendering any of its terms meaningless.') . . . ."

*American Stone,* 934 F.Supp. at 843.

### This Case

■  It will be seen from the above discussion that with the possible exception of the cases containing the word "actually," a word not present here, no guidance can be gleaned from other cases. There is no contention that the salesman here was "in" the vehicle. Given our cases which hold that some distinct meaning must be given to every word and no word is to be rejected as mere surplusage, "on" must be said to have some intended meaning here, a meaning which differs from "in."

In earlier generations when running boards were found on virtually all automobiles, there might have been some contention that a person on the running board of a vehicle would be on the car in question within the meaning of the policy. In today's world, one certainly would not expect a custodian of jewelry to be actually riding on a vehicle—upon it, if you will. Indeed, if the person were and this obstructed the vision of the driver, the person might run afoul of Maryland Code (1977, 1992 Repl.Vol., 1996 Supp.), § 21–1104 of the Transportation Article. In common parlance, one would expect the requirement that a person be "on" a vehicle to mean the person was required actually to be situate upon the exterior of the vehicle. This would be in line with the most nearly applicable definition of the word "on" found in Webster's Third New International Dictionary of the English Language 1574 (Unab. ed 1961), where it is said:

"1 a-used as a function word to indicate position over and in contact with that which supports from beneath (the book is

[on] the table) (was built [on] an island) (kept his hands [on] the desk)."

Black's Law Dictionary 981 (5th ed.1979), defines "on":

"Upon; as soon as; near to; along; along side of; adjacent to; contiguous to; at the time of; following upon; in; during; at or in contact with upper surface of a thing."

No citations are given. However, Black's Law Dictionary 1240 (4th ed.1951), after giving a similar definition, refers to *Slaughter v. Robinson*, 52 Utah 273, 173 P. 456, 458 (1918); *Hinton v. Vinson*, 180 N.C. 393, 104 S.E. 897, 900 (1920); and *Stuckey v. Jones*, 240 S.W. 565, 566 (Tex.Civ.App.1922). None of those cases, however, provides guidance in this case.

We do not understand that it is the intent that a person actually be physically located upon the vehicle. In fact, St. Paul agrees that for JMP to recover the employee in question does not have to be actually physically situate upon the vehicle in question. It says that "on" fixes place. That is fine, but interpretation is required, a judgment call as to whether a given fact situation amounts to being "on" the vehicle within the meaning of the policy.

At oral argument, in response to questions from the Court, St. Paul took the position that when the employee here put the gasoline nozzle into the vehicle and began pumping gasoline he was still "on" the vehicle, although he obviously would not have been physically affixed upon it. Counsel agreed that if the employee had gone four feet away from the car to an outside booth to pay for the gasoline in question, he still would have continued to be in attendance and thus "on" the vehicle, but he contended that when the employee went inside to pay for the gasoline, he abandoned the vehicle and therefore no longer was "on it." The problems encountered are demonstrated by the further contention in response to questions from the bench that if the building in question had been three feet away from the vehicle rather than forty feet and the person went a foot inside the building to pay for the gasoline, he would no longer be "on" the vehicle, not being in attendance. Further questions were propounded relative to a per-

son having his head under the hood of the car for some purpose or fixing a flat tire, in either of which situations he would have been unable to see the trunk in question. Nevertheless, it is the belief of the insurance company that this person would be in attendance and therefore "on" the vehicle. If the insurance company meant "in attendance," it did not say so. This all points up the problem.

"On" as here used is ambiguous. Under our cases some meaning must be ascribed to it. There is nothing to tell us what the insurance company meant. Each of the dictionary definitions we have quoted would require interpretation. Scriveners of insurance policies have the ability to express what they mean when they so desire. There is nothing to guide us here.

We have found no reported appellate opinion other than that of the Court of Special Appeals which has construed the "in or on" language with which we are here concerned. We conclude that the trial court erred in entering summary judgment in favor of St. Paul. The Court of Special Appeals likewise erred in affirming that judgment. As Judge Eldridge said for the Court in *Truck Ins. Exh. v. Marks Rentals,* 288 Md. 428, 433, 418 A.2d 1187, 1190 (1980), "[W]here contractual language is ambiguous, extrinsic evidence is admissible to show the intention of the parties." Hence, there must be a trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; RESPONDENT TO PAY THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.**