**THOMAS NOE, INC., doing business as Vintage Coins & Cards, Plaintiff–Appellant,**

v.

**HOMESTEAD INSURANCE COMPANY; North American Collectibles Association, Defendants–Appellees.**

No. 98–3257.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 4, 1999.

Decided April 21, 1999.

Martin J. Holmes, Sr. (argued and briefed), Shindler, Neff, Holems & Schlageter, Toledo, OH, for Plaintiff–Appellant.

Alan M. Petrov (argued and briefed), Timothy P. Whitford (briefed), Monica A. Sansalone (briefed), Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Defendants–Appellees.

Before: JONES, NELSON, and BOGGS, Circuit Judges.

**OPINION**

DAVID A. NELSON, Circuit Judge.

This is a diversity action, arising under Ohio law, in which a coin dealer asserts a claim under a property insurance policy for the value of certain coins and currency

stolen from an automobile. The district court granted summary judgment in favor of the defendants. Having concluded on *de novo* review that the plaintiff, as a matter of law, was not "actually in or upon" the vehicle when the theft occurred—and that the loss was thus not covered by reason of the plain language of an exclusionary clause containing this phrase—we shall affirm the judgment entered by the district court.

## I

Thomas Noe is president of the plaintiff in this action, Thomas Noe, Inc., doing business in Maumee, Ohio, as Vintage Coins & Cards. Mr. Noe has been in the coin business since 1973.

On the evening of November 30, 1996, Mr. Noe and his wife were returning home from Dearborn, Michigan, after attending the annual convention of the Michigan State Numismatic Society. Mr. Noe had exhibited coins for sale at the convention. On the back seat of the Noes' 1995 Oldsmobile Cutlass sedan—in briefcases [1] over which Mrs. Noe's coat had been draped—was $203,588 worth of coins and currency belonging to the plaintiff.

Mr. and Mrs. Noe had originally planned to return this property to the coin store in Maumee before driving to their home in Waterville, Ohio. Before they reached Maumee, however, Mrs. Noe spoke by cellular phone with her niece, Jennifer Bennett, who was watching after Mrs. Noe's three children for the weekend. Jennifer was at Mrs. Noe's sister's house, with the children, in Sylvania, Ohio. Mr. and Mrs. Noe changed their plans and drove to Sylvania to pick up the children. The driving time from the convention site in Dearborn to the sister's house in Sylvania was a little less than an hour.

Upon reaching the house in Sylvania, Mr. Noe pulled into the driveway and parked behind a van that Jennifer was using for the weekend. Another car was also standing in the driveway. The Noes retrieved a cassette tape out of the trunk of the Cutlass, and Mrs. Noe proceeded to the side-door of the house—a distance of twenty to twenty-five feet. A floodlight illuminated the driveway.

Mr. Noe locked the car doors with a remote control device, after which he checked every door individually to make sure it was locked. He then followed his wife into the house. There he greeted and hugged his stepchildren, standing where he could watch the car through the door at the side of the house. He subsequently helped the children get their shoes and coats on, and at one point he went back out to the driveway to get a child's coat out of the van.

Angel Bennett, another of Mrs. Noe's nieces, came in the side door a little later and asked what the commotion was on the street. Mr. Noe looked outside and saw nothing, but nonetheless went to check on the car. What he found was that the rear passenger window had been smashed and the company briefcases removed. Mr. Noe's personal briefcase was also taken, but Mrs. Noe's coat and purse, a duffle bag, a cellular phone and a radar detector remained undisturbed. The car doors were still locked. Mr. Noe did not see anyone driving or running away from the scene. The total time elapsing between the locking of the car doors and the discovery of the theft was said to have been three to five minutes.

About a month and a half before the theft, the plaintiff had purchased a policy of insurance from defendant Homestead Insurance Company through defendant North American Collectibles Association. The policy, which included coverage for the loss of inventory by way of theft, had gone into effect on October 17, 1996.

---

1. Mr. and Mrs. Noe differ on the number of briefcases involved: Mr. Noe recalls two briefcases and Mrs. Noe recalls only one.

The plaintiff made a timely claim under the policy. Homestead denied coverage, citing two different exclusionary clauses:

"5. **PERILS EXCLUDED**: The policy does not insure against loss or damage caused by:

\* \* \*

D. Loss or damage to property while in or upon any vehicle unless at the time the loss occurs, there is actually in or upon such vehicle, the insured, a permanent employee of the insured, or a person whose sole duty is to attend this vehicle only. This does not apply to property in the custody of the U.S. Postal Service.

\* \* \*

I. Theft from any automobile, motorcycle or other vehicle, occurring while such vehicles are unattended."

The district court concluded that both clauses barred coverage, and summary judgment was granted to the defendants on that basis.

## II

■ Where an exclusionary clause in an insurance contract is unambiguous, Ohio law requires that the plain language of the clause be given effect. *Park–Ohio Indus., Inc. v. Home Indem. Co.*, 975 F.2d 1215, 1218 (6th Cir.1992). It follows from this that if either of the exclusionary clauses quoted above applies unambiguously here, the judgment in favor of the defendants must be affirmed.

■ We conclude the exclusion contained in § 5.D of the policy does apply here as a matter of law. A man who is actually in a house tending to his stepchildren is not "actually in or upon" a vehicle

parked outside the house. In its application to the facts before us, the language of § 5.D is simply not ambiguous—and the language must be applied in accordance with its terms. In light of our conclusion as to § 5.D, we see no need to consider whether the Noes' Cutlass was "unattended" within the meaning of Exclusionary Clause § 5.I.

Recognizing that there is no binding Ohio precedent directly in point, the plaintiff relies heavily on an unreported decision in *Gottlieb & Sons, Inc. v. Hanover Ins. Co.*, No. 64559, 1994 WL 144539 (Ohio Ct.App.1994).[2] In *Gottlieb*, the court of appeals determined that the phrase "actually ... upon such vehicle" was ambiguous. *Id.* at \*2. The court further concluded that "a person is 'upon' an insured vehicle if he is within a reasonable geographic perimeter around the vehicle and has some reasonable relationship with the vehicle." *Id.* at \*3.

The factual situation in *Gottlieb* was one in which an employee of the insured was fourteen paces from the car and could see the vehicle as he inquired in a hotel lobby about the availability of a room. The employee saw a thief enter the car, and the employee managed to grab the back of the vehicle as it pulled away. Mr. Noe, in contrast, neither heard nor saw the theft. This means, as we see it, that he was not within a reasonable geographic perimeter around his car. Nothing in *Gottlieb* persuades us that § 5.D is inapplicable here.

## III

The plaintiff contends that the trial court erred in failing to consider the affidavit of an expert witness, Professor Beth Eisler of the University of Toledo College of Law. Professor Eisler's affidavit opines that both of the exclusionary clauses in

2. The plaintiff also relies on *JMP Assocs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 345 Md. 630, 693 A.2d 832 (1997), which holds that the phrase "on the vehicle" is ambiguous. In *JMP*, the court stressed that the exclusion did not contain the adverb "actually"—as the ex-

clusion at issue here does—and, like other courts, it treated the omission as dispositive. *JMP*, 693 A.2d at 838. The word "actually" having been included in § 5.D of the policy at issue here, the plaintiff can take little comfort in the *JMP* decision.

question here are ambiguous, and it suggests that "reasonable minds may differ as to whether Mr. Noe was 'actually in or upon' the vehicle or was 'attending' the vehicle."

■ Given our conclusion that Exclusionary Clause 5.D is unambiguous, it is clear that evidence of a law professor's contrary conclusion is inadmissible. See *North Am. Specialty Ins. Co. v. Myers,* 111 F.3d 1273, 1280–81 (6th Cir.1997)(holding a report of an "expert in the interpretation of insurance contracts" inadmissible to defeat summary judgment where there were no ambiguous provisions or technical terms in the relevant portion of the insurance policy in question). Professor Eisler's affidavit offers an opinion on a legal matter—the proper interpretation of an insurance policy—that is well within the competence of the court. See *id.* The district court did not err in disregarding the affidavit.

**AFFIRMED.**